Ross *v.* Leberman et al., Appellants.

Argued November 29, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Stanley Folz*, of *Sundheim, Folz & Sundheim,* for appellants.—Where acceptance of an offer is by act, the performance of the act without notice concludes the contract: Lineaweaver's Est., 284 Pa. 384; Naugle's Est., 268 Pa. 481; Snyder v. McGill, 265 Pa. 122; Lamb v. Prettyman, 33 Pa. Superior Ct. 190; Hoffman v. R. R., 157 Pa. 174; Patton's Exr. v. Hassinger, 69 Pa. 311; Reigart v. White, 52 Pa. 438.

*Charles E. Kenworthy*, with him *Evans, Bayard & Frick,* for appellee.—It has always been the rule in Pennsylvania that a guarantor of future credit or advances is entitled to notice of performance: Kay v. Allen, 9 Pa. 320; Kellogg v. Stockton & Fuller, 29 Pa.

576

460; Emerson v. Graff, 29 Pa. 358; Unangst v. Hibler, 26 Pa. 150; Coe & Richmond v. Buehler, 110 Pa. 366; Columbia Baking, etc., Co. v. Schissler, 35 Pa. Superior Ct. 621; Acme Mfg. Co. v. Reed, 197 Pa. 359; Gardner v. Lloyd, 110 Pa. 278.

OPINION BY MR. JUSTICE SADLER, January 6, 1930:

In 1921, Maurice Leberman, and his brother, now deceased, represented in this proceeding by his executor, bought and sold French francs for Ross, the plaintiff, and, by reason of these transactions, became indebted to him for $36,512.50. In the suit brought to recover this amount in 1928, liability arising from the transaction mentioned was admitted, but a counterclaim was presented based on certain expenditures made on behalf of Ross for insurance premiums, and, in a subsequent pleading, plaintiff agreed this sum should be deducted from his demand. We are not therefore concerned in this case with that item. To the balance of the counterclaim, which causes the present dispute, a reply in the nature of a demurrer was filed to defendants' statement, and judgment also asked for want of a sufficient affidavit of defense to the original demand. The second request was granted by the trial court, and the correctness of its conclusion is the subject of complaint in the present appeal. In passing upon its action, it must be kept in mind that doubts arising, if any, are to be resolved in favor of the parties against whom the court has decided on the pleadings alone: Rhodes v. Terheyden, 272 Pa. 397; Helfenstein v. Line Mountain Coal Co., 284 Pa. 78; Eizen v. Stecker, Inc., 295 Pa. 497.

Defendant averred, as a set-off to the admitted indebtedness, a demand for expenditures made at the request and on behalf of the plaintiff. Paragraph 16 of the counterclaim asserts Ross requested that the balance due as the result of the transaction in foreign exchange in 1921 should be so applied in a designated way, and that this was in fact done. It appeared that the

three parties here involved, and another, were equal owners of the capital stock of Edgar & Company, in which each had large financial interests. Its operation required the use of considerable sums to carry on its corporate business, and all interested had furnished certain amounts prior to 1923. In January of that year it became apparent that additional advances were necessary, and Ross, who had then moved his residence to London, verbally agreed with the Lebermans to pay one-third of the amount required to keep the concern a going-one, the fourth stockholder being unable to give financial assistance. It was stipulated that plaintiff would pay a one-third share of the extra funds required, the balance at the time due by defendants to him to be used to cover his portion in so far as necessary, in case the defendants individually raised the remaining two-thirds which might be expended. In pursuance of this agreement, the latter made outlays for Edgar & Company until 1926, amounting to $105,769.33. One-third of this amount exceeded the indebtedness due Ross, which he stipulated should be so applied. It was therefore claimed that the set-off was greater than the debt sued for, and no judgment for plaintiff could be entered. The statements above recited are those sworn to, and, for present purposes, are taken as accurately representing the situation.

In support of the right to summary judgment, plaintiff urged the insufficiency of the counterclaim, in that it failed to aver that notice was given by the Lebermans of the acceptance of the offer of Ross made in 1923, and the contract was therefore unenforceable. The promise in this case was not to pay third parties sums which might be borrowed by the Lebermans, as in the ordinary case of guaranty, nor was there a contingent liability to pay, but an understanding to underwrite one-third of the advances made for the corporation, in which Ross was interested. The necessary amounts were directed to be taken from the balance then due by the

Lebermans, provided the defendants should supply the remaining two-thirds, which they claim to have expended between 1923 and 1926. No notice of the outlays made was furnished directly to Ross, nor did he ask to be advised as to the amount. As a one-fourth owner of the stock of the corporation it would seem he was in position to secure the information if desired. No revocation of his undertaking appeared.

The argument is made that the contract set up was unilateral in nature, and therefore without effect, unless a notice of acceptance was given, which fact is not averred, but the act agreed upon as a condition of liability was performed without revocation, and that is sufficient to bind the offeror. "It is often said that notice of acceptance is necessary for the completion of a contract, but it is not true and never has been true, as a general proposition, that, where an offeror requests an act in return for his promise, and the act is performed, notice to the offeror of the performance is necessary to create a contract": 1 Williston on Contracts 117. This rule has been generally recognized, and finds ample support in our decisions: Snyder v. McGill, 265 Pa. 122; Naugle's Est., 268 Pa. 481; Lineaweaver's Est., 284 Pa. 384. To the same effect is the general statement in 13 C. J. 275. Nor is there any contrary rule laid down in section 56 of Restatement of the Law of Contracts by the American Law Institute, which in its first sentence says: "Where forbearance or an act other than a promise is the consideration for a promise, no notification that the act or forbearance has been given is necessary to complete the contract." The learned court below, in the opinion here filed, recognizes the legal principle above stated as accurate.

It is further to be noticed that the offer and promise to reimburse was contemporaneous with the understanding that advances were to be made, and was not a liability to be contingent upon the making of some new contract with a third party, for the performance of

which the offeror agreed to become responsible. This is a difference recognized in Cumberland Glass Co. v. Wheaton, 208 Mass. 425, 94 N. E. 803, which distinguishes on this ground the case of Bishop v. Eaton, 161 Mass. 496, 37 N. E. 665, cited and relied on by the appellee here. Even in the case of strict guaranty, it was said by this court in Gardner v. Lloyd, 110 Pa. 278, 284, where practically all of the cases referred to by plaintiff are discussed: "It may be conceded that in all cases of absolute guaranty accepted when given, whether for the extension of a present indebtedness or the creation of a new one, notice of acceptance is not necessary to fix the liability of the guarantor." The general rule applicable has been thus stated: "In reference to the sufficiency of an acceptance there is a distinction between an offer to make a contract executory on both sides and an offer or promise for an act. In the latter case the only acceptance of the offer that is necessary is the performance of the act. In other words, the promise becomes binding when the act is performed": 6 R. C. L. 607.

The opinion of the court in this case shows that summary judgment was entered not because of lack of notice of acceptance of the offer, before revocation, but for failure to inform Ross when the actual expenditures were made, which it held was required if the counterclaim was to be sustained. In support of this proposition, 13 C. J. 284, and 1 Williston on Contracts 118 are cited. It will be noted that the authority first relied on is based upon but one American decision, Bascom v. Smith, 164 Mass. 61, 41 N. E. 130, where, in the case of a guaranty, it was held notice was not required where the information was otherwise available to the one agreed to be bound. In the second, the broad statement is made that notice of completion by performance is required where the facts are peculiarly within the knowledge of the one performing. Without citation of authorities, it is said: "Notice in such a case, however, is

not a necessary element in the creation of the contract. If this were true, the offeror might revoke his offer after performance of the act requested, but prior to notification. Such a result would be unjust, and is required neither by the necessities of the case nor the authorities. The contract is complete on the performance of the act but is subject to a condition subsequent that if notice of the performance of the act is not given within a reasonable time by the promisee, the promisor is freed from obligation." But, as the writer observes, the rule which he suggests is most frequently applied to strict guaranties, and the authorities to which he later refers do not consider original promises to perform, if another does an act which the offeror has asked to be carried out, but relate to liability to third parties with whom the offeree has entered into new obligations undetermined in amount.

An attempt has been made to formulate a rule by the American Law Institute in section 56, already referred to, when it states: "But if the offeror has no adequate means of ascertaining with reasonable promptness and certainty that the act or forbearance has been given, and the offeree should know this, the contract is discharged unless, within a reasonable time after performance of the act or forbearance, the offeree exercises reasonable diligence to notify the offeror thereof." But, as there said by the authors, "It is only in the exceptional case where the offeror has no convenient means of ascertaining whether the requested act has been done that notice is requisite. Even then, it is not the notice which creates the contract, but lack of the notice which ends the duty."

The principle would seem to be properly stated in Hare on Contracts, page 332: "When, what the promisor stipulates for is performance, the contract is complete as soon as the act is done, whether it be or be not known or communicated to the promisor. If the circumstances are such that he cannot inform himself by

inquiry, it may be requisite to give him notice; but this is a condition subsequent that will annul the contract if unfulfilled, and not a step that must be taken to call it into being." It is not the notice which creates the contract, but a lack of it may constitute an excuse from liability. If this is so, then the agreement is enforceable, unless the promisor can establish that for some reason he is relieved from performance. If this arises from failure to give notice at the time advances were made, and he was therefore misled and prejudiced, not having the power to learn the true facts by inquiry, this is a matter of defense, and must be averred in answer to the counterclaim filed, which is on its face sufficient. The defendants, while making claim as a set-off, were not bound to aver facts which would show the existence of matters properly of defense to the counterdemand made: 31 Cyc. 109; Harper v. Lukens, 271 Pa. 144; Shaw v. Newingham, 287 Pa. 304; Drumgoole v. Lyle, 30 Pa. Superior Ct. 463. The claimant is not bound in his pleading to negative possible defenses: Second Nat. Bank v. Gardner, 171 Pa. 267, 272.

Ross had agreed that advances should be made to Edgar & Co., in the success of whose business he was interested, and stipulated that the balance owing him should be used by the Lebermans, provided they furnished twice the sum which he agreed to pay. This they did, without receiving notice of revocation of their authority to so act. If Ross was deceived as to the extent of payments being made, or he was unable, after due inquiry, though owning one-fourth of the stock of the company, to find the amount being expended under his agreement, this may be considered in way of defense, but if he desires to take advantage of such facts, he must assert and prove them. It follows from what has been said that a summary judgment should not have been granted in this case, but an opportunity given to Ross to set up the excuse for nonpayment by proper pleading, and to

establish on trial any essential matters constituting a release from liability under the agreement which he made.

The judgment is reversed and a procedendo awarded.